**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

Civil Case No.:

| | |
|---|---|
| ELIZABETH LIVINGSTON, as an individual and on behalf of all others similarly situated, | **:**<br>**:**<br>**:** |
| *Plaintiff,* | **:**<br>**:** |
| *vs.* | **:**<br>**:** |
| FULLBAR, LLC.,  a Colorado limited liability company, | **:**<br>**:** |
| *Defendant.* | **:**<br>**:**<br>**:** |

**CLASS ACTION COMPLAINT**

Plaintiff, Elizabeth Livingston, individually, and on behalf of all others similarly situated, by and through her undersigned counsel, and pursuant to all applicable *Federal Rules of Civil Procedure*, hereby files this Class Action Complaint, and alleges against Defendant, FULLBAR, LLC. (collectively "FULLBAR" or "Defendant"), as follows:

**I. INTRODUCTION**

1.      At all material times hereto, Defendant has unlawfully, negligently, unfairly, misleadingly, and deceptively represented that its fullbar appetite regulator bars, sold in a variety of flavors, are "100% Natural" and/or "All Natural," despite containing unnatural, synthetic, and/or artificial ingredients, including but not limited to maltodextrin, potato maltodextrin, soy protein concentrate, soy protein isolate, and/or soy lecithin. The flavor varieties of the products include, but are not limited to:

    1)  Chocolate Peanut Butter;

    2)  Double Chocolate;

3)  Peanut Butter Crunch;

4)  Cranberry Almond; and

5)  Chocolate Caramel.

(Referred to individually as "the Product" and collectively as "The Products"). An example of the

Product is depicted below for demonstrative purposes:



2.     The Products are not "natural" and certainly not "100% Natural," because they contain unnatural, synthetic and/or artificial ingredients, including but not limited to maltodextrin, potato maltodextrin, soy protein concentrate, soy protein isolate, soy lecithin.

3.     Defendant manufactures, markets, advertises, and sells the Products as being "100% Natural" on the front packaging of the Products.

4.     At all material times hereto, the Products made the exact same "All-Natural" and "100% Natural" claims on the exact same prominently displayed location on the front and back packaging for the Products.

5.      The representations that the Products are "100% Natural" are central to the marketing of the Products.  The misrepresentations were uniformly communicated to Plaintiff and every other member of the class.

6.     The "100% Natural"  claim is false, misleading, and likely to deceive reasonable consumers in the same respect—that being due to their unnaturalness for containing unnatural, synthetic, and/or artificial ingredients.

7.     Contrary to Defendant's express and implied representations, the Products, at all material times hereto, are not "100% Natural" because they contain unnatural, synthetic, and/or artificial ingredients, such as maltodextrin, potato maltodextrin, soy protein concentrate, soy protein isolate, soy lecithin.

8.     The Products are simply not "100% Natural." As a result, the Products are misbranded and sold pursuant to unlawful, unfair, deceptive, misleading, and deceptive business

practices. At a minimum, Defendant's "All Natural" and "100% Natural" statements are likely to deceive reasonable consumers.

9.    Plaintiff brings this class action to secure, among other things, equitable relief, declaratory relief, restitution, and in the alternative, damages, for a Class of similarly situated purchasers, against FULLBAR, LLC, for: (1) false, deceptive, unfair, and unlawful business practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*; (2) Negligent Misrepresentation; (3) Breach of Express Warranty; (4) Violation of Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; and (5) Unjust Enrichment.

10.    Plaintiff is seeking damages individually and on behalf of the Class. In addition, Plaintiff is seeking an Order declaring Defendant's business practice to be in violation of FDUTPA and requiring Defendant to cease using unnatural, synthetic, and/or artificial ingredients in its "100% Natural" Products, and/or Ordering Defendant to cease from representing its Products are "100% Natural" on the packaging for the Products that contain unnatural, synthetic, and/or artificial ingredients.

11.    Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws or regulations.

12.    All allegations herein are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

## II. JURISDICTION AND VENUE

13.    This Court has jurisdiction over the subject matter presented by this Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original

jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff is a citizen of Florida and Defendant can be considered a citizen of Colorado for diversity purposes.

14.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that based on the sales of the Product the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set forth below, diversity of citizenship exists under CAFA because, as more fully set forth below, Plaintiff is a citizen of Florida, and FULLBAR, and can be considered a citizen of Colorado for diversity purposes. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the subject Products of this action in this judicial district.

## III. <u>PARTIES</u>

15.     Plaintiff, ELIZABETH LIVINGSTON, is an individual more than 18 years old, and is a citizen of Florida, who resides in the city of Pembroke Pines, Broward County. Plaintiff respectfully requests a jury trial on all damage claims.

16.     Defendant, FULLBAR, promoted and marketed the Products at issue in this jurisdiction and in this judicial district. FULLBAR is a Colorado Limited Liability Company with its principal place of business located at 1444 Wazee St., Suite 350, Denver, CO 80202. FULLBAR lists a Registered Agent with the Colorodo Secretary of State as Joel Appel, located at 6000 Greenwood Plaza Blvd, Suite 120, Greenwood Village, CO 80111. FULLBAR can be considered a citizen of Colorado for diversity purposes. Based upon information and belief, all individual members of FULLBAR are citizens of States other than Florida. Based on publicly available

information, the citizenship of each individual member of FULLBAR cannot be confirmed at this time. The citizenship of each individual member of FULLBAR will be determined throughout the course of discovery.

17.     The advertising for the Product relied upon by Plaintiff was prepared and/or approved by FULLBAR and its agents, and was disseminated by FULLBAR and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Products was designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiff and the Class into purchasing the Products.  FULLBAR is the owner, manufacturer and distributor of the Products, and is the company that created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive advertising and statements for the Products.

18.     Plaintiff alleges that, at all times relevant herein, FULLBAR and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of FULLBAR and at all times relevant herein, each was acting within the purpose and scope of that agency and employment. Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Products, as well as their respective employees, also were FULLBAR agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

19.     In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, FULLBAR in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Product by means of untrue, misleading, deceptive, and/or fraudulent representations, and that FULLBAR participated in the making of such representations in that it

disseminated those misrepresentations and/or caused them to be disseminated. Whenever reference in this Complaint is made to any act by FULLBAR or its subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of FULLBAR committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of FULLBAR while actively engaged in the scope of their duties.

## IV. FACTUAL ALLEGATIONS

### A. Fullbar's Advertising of the "All-Natural" and "100% Natural" Product

20.     FULLBAR manufactures, distributes, markets, advertises, and sells the Product that claims to be "100% Natural" when in fact, that claim is false, deceptive, and likely to mislead a reasonable consumer, because the Product contains unnatural, synthetic, and/or artificial ingredients, including maltodextrin, potato maltodextrin, soy protein concentrate, soy protein isolate, and soy lecithin.

21.     Defendant's "All-Natural" and "100% Natural" claims, prominently displayed on the front of the box for the products and on the front of each individual packaging of the Products, is untrue, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class.."

22.     Defendant unlawfully markets, advertises, sells and distributes the Product to Florida and United States purchasers in grocery stores, food chains, mass discounters, mass merchandisers, club stores, convenience stores, drug stores and/or dollar stores as being "All-Natural" and "100% Natural."

23.     All of the Products' packaging uniformly and consistently states that the Products are "100% Natural" on the front of the box for each of the Products and on the front of each

individual packaging for the Products that come inside each box.

24.     As a result, all consumers within the Class, including Plaintiff, who purchased the Products were exposed to the same "All-Natural" and "100% Natural" claims in the same location on the front box and individual packaging for the Products.

25.     Unfortunately for Plaintiff and members of the Class, they were charged a price premium for the Product over and above other comparable products that do not claim to be "All-Natural" or "100% Natural."

**B. The Products are not "All-Natural" or "100% Natural" Because They Are Highly Processed and Contain Artificial and Synthetic Ingredients**

26.     Contrary to FULLBAR's representations that the Products are "100% Natural," the Products are not "All-Natural" because they are highly processed and contain numerous artificial, synthetic and/or genetically modified ingredients.  Specifically, Defendant's fullbar appetite regulator bars contain maltodextrin, potato maltodextrin, soy protein concentrate, soy protein isolate, and soy lecithin.

27.     The Products are not "100% Natural" because of these artificial, synthetic and/or genetically modified ingredients.

28.     ***Maltodextrin*** is a saccharide polymer that is produced through partial acid and enzymatic hydrolysis of corn starch.[1]  The acid hydrolysis process is specifically deemed to be a relatively "severe process" that renders an ingredient no longer "natural."[2]  It is a white powder primarily found in processed foods where it is used as a thickener or filler. It is a synthetic factory-

---

1.     Maltodextrins,     GMO     Compass,     http://www.gmo-compass.org/eng/database/ingredients/148.maltodextrins.html (last visited September 25, 2014).

2.     *See id.*

produced texturizer that is created by complex processing that does not occur in nature. It is used in processed foods as filler and to enhance texture and color. To produce Maltodextrin, acids, enzymes[3] or acids and enzymes are applied in sequence to a starch to induce partial hydrolysis (saccharification).  The acids or enzymes convert or depolymerize starch to glucose or maltose molecules. Once maltose is high enough for Maltodextrin, the acids or enzymes are neutralized, removed or deactivated, and the resulting product is then refined, purified, and concentrated.

29.     Not only is this ingredient synthetic, it is also derived from Genetically Modified Organisms ("GMOs"). As discussed more thoroughly below, GMOs are not natural.

30.     Similarly, *soy protein concentrate, soy protein isolate, and soy lecithin*, are derived from GMOs and/or GE seeds. The soy of these ingredients is derived from plants that grow from seeds in which DNA splicing has been used to place genes from another source into a plant. Because GMOs have been modified through biotechnology, the Products are not "100 % Natural." GMOs' genetic makeup has been altered through biotechnology to exhibit characteristics that do not otherwise occur in nature.[4] This fact is not disclosed in conjunction with the claim the Products are "100% Natural."

31.     According to the World Health Organization, of which the United States is Member State, "GMOs can be defined as organisms in which the genetic material (DNA) has been *altered in a way that does not occur naturally*. The technology is often called 'modern biotechnology' or

---

3.      *See* Corn Refiners Association, Nutritive Sweeteners From Corn, 17-19 (2006), available at http://www.corn.org/wp-content/uploads/2009/12/NSFC2006.pdf (last accessed September 25, 2014).

4.      Eng, Monica. "Debate rages over labeling biotech foods; Industry resists listing genetically modified ingredients; consumer worries continue." L.A. Times. June 2, 2011. BUSINESS; Business Desk; Part B; Pg. 4.

'gene technology,' sometimes also 'recombinant DNA technology' or 'genetic engineering.' It allows selected individual genes to be transferred from one organism into another, also between non-related species."[5]

32.     In addition, the Supreme Court has held a naturally occurring DNA segment is a product of nature and not patent eligible, but that synthetically created DNA was not naturally occurring and, therefore, is not precluded from patent eligibility. *See Ass'n. for Molecular Pathology v. Myriad Genetics, Inc.,* No. 12-398, 2013 WL 2631062, --- *S. Ct.* --- (June 13, 2013). Because naturally occurring genes cannot be patented, it follows that genes that can be patented are not natural.

33.     Despite all these unnatural ingredients, Defendant knowingly markets the Products as "100% Natural."

34.     The "FDA has not developed a definition for use of the term natural or its derivatives," but it has *loosely* defined the term "natural" as a product that "does not contain added color, artificial flavors, or synthetic substances."[6] According to federal regulations, an ingredient is synthetic if it is:

> [a] substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

---

5.     WORLD HEALTH ORGANIZATION, 20 Questions on Genetically Modified (GM) Foods, http://www.who.int/foodsafety/publications/biotech/20questions/en/index.html (last visited September 25, 2014).

6.     *What is the Meaning of 'Natural' on the Label of Food?*, FDA, Transparency, FDA Basics, available at *http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868* (last visited September 25, 2014).

7 C.F.R. §205.2.

35.     The FDA has not occupied the field of "natural labeling," and in any event, this case is not about labeling, it is about Defendant's voluntary and affirmative "100% Natural" statement on the front packaging for the Products being false, misleading, and likely to deceive reasonable consumers.  Courts routinely decide whether "natural" statements are likely to deceive reasonable consumers.

36.     Similarly, the USDA's Food Safety and Inspection Service ("FSIS") defines a "natural" product as a product that does not contain any artificial or synthetic ingredient and does not contain any ingredient that is more than "minimally processed," defined as:

> (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices.
>
> Relatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing.[7]

37.     Food manufacturers must comply with federal and state laws and regulations governing labeling food products. Among these are the Federal Food, Drug and Cosmetic Act (FDCA) and its labeling regulations, including those set forth in 21 C.F.R. part 101.

---

7.     *Food Standards and Labeling Policy Book*, USDA, 2005, available at *http://www.fsis.usda.gov/oppde/larc/policies/labeling_policy_book_082005.pdf* (last visited September 25, 2014).

38.     Florida and federal law have placed similar requirements on food companies that are designed to ensure that the claims companies are making about their products to consumers are truthful and accurate.

39.     Plaintiffs are explicitly alleging only violations of state law that is identical and/or mirrors the labeling, packaging, and advertising requirements mandated by federal regulations and laws, including but not limited to, the Federal Food, Drug, and Cosmetic Act (FD&C Act), the Federal Food and Drug Association (F.D.A.), the Federal Trade Commission (F.T.C.), and the Nutrition Labeling and Education Act (N.L.E.A.).

40.     In addition to its blanket adoption of federal labeling requirements, Florida has also enacted various laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. For example, Defendant's Product label is misleading and deceptive pursuant to Florida's Food Safety Act, FLA. STAT. §§ 500.01, *et seq.*—identical in all material aspects hereto—to the Food and Drug Administration's ("FDA") Federal Food Drug and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 343, 343-1. Plaintiffs claim does not seek to contest or enforce anything in Florida's Food Safety Act that is beyond the FFDCA or FDA regulation requirements.

41.     For example, the Florida Food Safety Act, Fla. Stat. § 500.01, states:

Purpose of chapter.—This chapter is intended to:

(1) Safeguard the public health and promote the public welfare by protecting the consuming public from injury by product use and the purchasing public from injury by merchandising deceit, flowing from intrastate commerce in food;
(2) Provide legislation which shall be uniform, as provided in this chapter, and administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the Federal Food, Drug, and Cosmetic Act; the Agriculture Marketing Act of 1946; and likewise uniform with the Federal Trade Commission Act, to the extent that it expressly prohibits the false advertisement of food; and

(3) Promote thereby uniformity of such state and federal laws and
their administration and enforcement throughout the United States
and in the several states.

Fla. Stat. § 500.02(1)–(3).

42.     In Florida, "A food is deemed to be misbranded: If its labeling is false or misleading
in any particular." Fla. Stat. § 500.11(1)(a).

43.     Like Plaintiff's state law claims, under FDCA section 403(a), food is "misbranded"
if "its labeling is false or misleading in any particular," or if it fails to contain certain information
on its label or its labeling.  21 U.S.C. § 343(a).

44.     Furthermore, "Plaintiff's state consumer protection law claims are not preempted
by federal regulations." *Mark Krzykwa v. Campbell Soup Co.*, Case No. 12-62058-CIV-
DIMITROULEAS, *6 (S.D. Fla., May 28, 2013) (DE 37). (citing *Jones v. ConAgra Foods, Inc.*,
2012 WL 6569393, *6 (N.D. Cal. Dec. 17, 2012). Additionally, the primary jurisdiction doctrine
does not apply "because the FDA has repeatedly declined to adopt formal rule-making that would
define the word 'natural.'" *Id.* at p. 8.

45.     Although Defendant markets the Products as "100% Natural," it fails to also
disclose material information about the Products; the fact that they contains unnatural, synthetic,
and/or artificial ingredients. This non-disclosure, while at the same type branding the Products as
"100% Natural," is deceptive and likely to mislead a reasonable consumer. Defendant Deceptively
Markets the Products as "All Natural" to Induce Consumers to Purchase the Products.

46.     A representation that a product is "All Natural" and/or "Natural" is material to a
reasonable consumer.  According to Consumers Union, "Eighty-six percent of consumers expect
a 'natural' label to mean processed foods do not contain any artificial ingredients."[8]

---

8.     Notice of the Federal Trade Commission, Comments of Consumers Union on

47.     Defendant markets and advertises the Products as "100% Natural" to increase sales of the Products and Defendant is well-aware that claims of food being "100% Natural" are material to consumers. Despite knowing that not all of the ingredients are "100% Natural,", Defendant has engaged in a widespread marketing and advertising campaign to portray the Products as being "100% Natural."

48.     Defendant engaged in misleading and deceptive campaign to charge a premium for the Products and take away market share from other similar products.  As stated herein, such representations and the widespread marketing campaign portraying the Products as being "100% Natural" are misleading and likely to deceive reasonable consumers because the Products are not "100% Natural" due to being made with unnatural ingredients.

49.     Reasonable consumers frequently rely on food label representations and information in making purchase decisions.

50.     Plaintiffs and the other Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.  Defendant's misleading affirmative statements about the "naturalness" of its Products obscured the material facts that Defendant failed to disclose about the unnaturalness of its Products.

51.     Plaintiffs and the other Class members were among the intended recipients of Defendant's deceptive representations and omissions.

52.     Defendant made the deceptive representations and omissions on the Products with the intent to induce Plaintiff's and the other Class members' purchase of the Products.

---

Proposed Guides for Use of Environmental Marketing Claims, 16 CFR § 260, Dec. 10, 2010, http://www.ftc.gov/os/comments/greenguiderevisions/00289-57072.pdf (last visited September 25, 2014).

53.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

54.     Thus, Plaintiff and the other Class members' reliance upon Defendant's misleading and deceptive representations and omissions may be presumed.

55.     The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiffs and the Class.

56.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the other Class members.

57.     In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for "100% Natural" labeled products over comparable products that are not labeled "100% Natural" furthering Defendant's private interest of increasing sales for its Products and decreasing the sales of products that are truthfully offered as "100% Natural" by Defendant's competitors, or those that do not claim to be "100% Natural."

58.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiffs and the other Class members in that they:

    1) paid a sum of money for Products that were not as represented;

    2) paid a premium price for Products that were not as represented;

    3) were deprived the benefit of the bargain because the Products they purchased were different than what Defendant warranted;

4) were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

5) did not receive Products that measured up to their expectations as created by Defendant;

6) ingested a substance that was other than what was represented by Defendant;

7) ingested a substance that Plaintiff and the other members of the Class did not expect or consent to;

8) ingested a product that was artificial, synthetic, or otherwise unnatural;

9) ingested a substance that was of a lower quality than what Defendant promised;

10) were denied the benefit of knowing what they ingested;

11) were denied the benefit of truthful food labels;

12) were forced unwittingly to support an industry that contributes to environmental, ecological, and/or health damage;

13) were denied the benefit of supporting an industry that sells natural foods and contributes to environmental sustainability; and

14) were denied the benefit of the beneficial properties of the natural foods promised.

59.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the other Class members would not have been economically injured.

60.     Among other things, Plaintiffs and the other Class members would not have been denied the benefit of the bargain, they would not have ingested a substance that they did not expect or consent to.

61.     Plaintiff and the other Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the other Class members purchased, purchased more of, or paid more for, the Products than they would have done, had they known the truth about the Products' unnaturalness.

62. Accordingly, Plaintiffs and the other Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

**C. Plaintiff's Purchase and Reliance on the "100% Natural" and "All-Natural Statement**

63. Plaintiff, Elizabeth Livingston, purchased the Products, including but not limited to the Chocolate Peanut Butter and Double Chocolate flavors, approximately 10-15 times throughout the Class Period from a Walmart located in Pembroke Pines, Broward County, Florida, on various dates from approximately January to August 2014.

64. Plaintiff interpreted the "100% Natural" claim to mean that the Products did not contain unnatural, synthetic, artificial, or genetically modified ingredients.

65. Subsequent to purchasing the Product, Plaintiff discovered that the Products are not "100% Natural" because of the presence of unnatural, synthetic, artificial, and/or genetically modified ingredients.

66. Through a variety of advertising, including the front packaging of the Products, FULLBAR has made untrue and misleading material statements and representations regarding the Products, which have been relied upon by Plaintiff and members of the Class.

67. Plaintiff and members of the Class would not have purchased the Products had they known that they were not "100% Natural." Likewise, if Plaintiff and members of the Class had known that all of the ingredients in the Products were not "100% Natural," they would not have purchased them.

68. Defendant's "100% Natural" statement related to the Products is material to a consumer's purchase decision because reasonable consumers, such as Plaintiff and members of the Class, care whether products contain unnatural, synthetic, and/or artificial ingredients, and thus attach importance to a "100% Natural" claim when making a purchasing decision.

69.     Plaintiffs and the proposed Class, all reasonable consumers, do not expect a Product that claims to be "100% Natural" to contain non-natural, highly processed ingredients, and genetically modified ingredients.

### D. Plaintiff Has Suffered Economic Damages

70.     As a result of purchasing the Products that claim to be "100% Natural," but contain unnatural, synthetic and/or artificial ingredients, Plaintiff and members of the Class have suffered economic damages.

71.     Defendant's "100% Natural" advertising for the Products was and is false, misleading, and/or likely to deceive reasonable consumers. Therefore, the Products are misbranded and valueless, worth less than what Plaintiff and members of the Class paid for them, and/or are not what Plaintiff and members of the Class reasonably intended to receive.

72.     Because the Products are unlawfully misbranded, and there is no market value for an unlawful product, Plaintiffs and the Class seek damages equal to the aggregate purchase price paid for the Products during the Class Period and injunctive relief described below.

73.     Moreover, and in the alternative, Plaintiff and members of the Class paid a price premium for the so called "All Natural" Products, over other similar products that do not claim to be "100% Natural." As a result, Plaintiff and the Class is entitled to damages in the amount of the difference between the premium purchase price charged for the Products and the true market value of the Products without the false "100% Natural" representations.

### V. <u>CLASS ACTION ALLEGATIONS</u>

74.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

75.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as Statewide Classes and additionally and/or alternatively, Nationwide Classes as follows:

    a.  **Statewide Classes.**  Plaintiff brings this action on behalf of herself and on behalf of statewide classes, as follows:

        i.  **Florida Classes.** Pursuant to Rule 23(a) and (b)(2), all Florida residents who purchased the Products identified in Plaintiff's Complaint, during the period from October 23, 2010, for personal use and not resale, through and to the date Notice is provided to the Class;

        ii.  Pursuant to Rule 23(a) and (b)(3), all Florida residents who purchased the Products identified in Plaintiff's Complaint, during the period from October 23, 2010, for personal use and not resale, through and to the date Notice is provided to the Class.

    b.  **Nationwide Classes**.  Plaintiff brings this action on behalf of herself and on behalf of statewide classes, as follows:

        i.  **Nationwide Classes.**  Pursuant to Rule 23(a) and (b)(2), all United States residents who purchased the Products identified in Plaintiff's Complaint, during the period from October 23, 2010, for personal use and not resale, through and to the date Notice is provided to the Class;

        ii.  Pursuant to Rule 23(a) and (b)(3), all United States residents who purchased the Products identified in Plaintiff's Complaint, during the period from October 23, 2010, for personal use and not resale, through and to the date Notice is provided to the Class.

76.     Plaintiff respectfully reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.  Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff

77.     Defendant's representations, practices and/or omissions were applied uniformly to all members of all Classes, including any subclasses, so that the questions of law and fact are common to all members of the Class and any subclass.

78.     All members of the Classes and any subclasses were and are similarly affected by the deceptive advertising for the Products, and the relief sought herein is for the benefit of Plaintiffs and members of the Classes and any subclasses.

**Numerosity—Federal Rule of Civil Procedure 23(a)(1)**

79.     Based on the annual sales of the Products and the popularity of the Products, it is readily apparent that the number of consumers in both the Classes and any subclasses is so large as to make joinder impractical, if not impossible. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and (b)(3)**

80.     Questions of law and fact common to the Plaintiff Classes and any subclasses exist that predominate over questions affecting only individual members, including, *inter alia*:

1)    Whether Defendant's business practices violated FDUTPA, FLA. STAT. §§ 501.201,

*et seq.*;

2) Whether the Products are "100% Natural;"

3) Whether the ingredients contained in the Products are "100% Natural;"

4) Whether the ingredients contained in the Products are unnatural;

5) Whether the ingredients contained in the Products are synthetic;

6) Whether the ingredients contained in the Products are artificial;

7) Whether the ingredients contained in the Products are genetically modified;

8) Whether the claim "100% Natural" on the Products' packaging is material to a reasonable consumer;

9) Whether the claim "100% Natural" on the Products' packaging and advertising is likely to deceive a reasonable consumer;

10) Whether the claim "100% Natural" on the Products' packaging and advertising is misleading to a reasonable consumer;

11) Whether a reasonable consumer is likely to be deceived by a claim that products are "100% Natural" when the products contain unnatural, synthetic, artificial, and/or genetically modified ingredients;

12) Whether Defendant was unjustly enriched by the sale of the Products; and

13) Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

**Typicality—Federal Rule of Civil Procedure 23(a)(3)**

81.    The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Classes and any subclasses, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Classes and any subclasses is common to

the members of each. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

**Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4)**

82. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Plaintiff Classes and any subclasses.

83. Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation. The Class' interests will be fairly and adequately protected by Plaintiffs and Plaintiffs' counsel. Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)**

84. Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the final injunctive relief and declaratory relief sought on behalf of the Class and any subclass as respective wholes. Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**Superiority—Federal Rule of Civil Procedure 23(b)(3)**

85. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

86.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

87.     Certification of this class action is appropriate under Rule 23, *Federal Rule of Civil Procedure*, because the questions of law or fact common to the respective members of the Classes and any subclasses predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

## VI. FIRST CAUSE OF ACTION:
## FOR VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *ET SEQ*.

88.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through eighty-seven (87) of this Amended Complaint as if fully set forth herein verbatim.

89.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*. The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

90.     The sale of the Products at issue in this cause was a "consumer transaction" within the scope of the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*.

91.     Plaintiff is a "consumer" as defined by Section 501.203, *Florida Statutes*. Defendant's Products are a "good" within the meaning of the Act.  Defendant is engaged in trade or commerce within the meaning of the Act.

92.     Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

93.     Section 501.204(2), *Florida Statutes* states that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act."  Defendant's unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably under the circumstances and, therefore, violate Section 500.04, Florida Statutes and 21 U.S.C. Section 343.

94.     Defendant has violated the Act by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.  Specifically, Defendant has represented that their Products are "100% Natural," when in fact the Products contain unnatural, synthetic, and/or artificial ingredients.

95.     Plaintiffs and Class Members have been aggrieved by Defendant's unfair and deceptive practices in that they purchased and consumed Defendant's Products.

96.     Reasonable consumers rely on Defendant to honestly represent the true nature of their ingredients.

97.     As described in detail above, Defendant has represented that its products are "All Natural," when in reality they contain unnatural, synthetic, and/or artificial ingredients.

98.     Defendant has deceived reasonable consumers, like Plaintiff and the Class, into believing its Products were something they were not—"All Natural."

99.     The knowledge required to discern the true nature of Defendant's Products is beyond that of the reasonable consumer—namely that the Products contain unnatural, synthetic, and/or artificial ingredients. Defendant's "All Natural" statement leads reasonable consumers to believe that all of the ingredients in the Products are natural, when they are not.

100.    Federal and State Courts decide omission and misrepresentation matters regularly, including those involving a reasonable consumer's understanding of the meaning of "All Natural." Accordingly, the issue of whether the "All Natural" label is misleading to a reasonable consumer is well within the jurisdiction of the Court.

101.    The damages suffered by the Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as described above.

102.    Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiffs and the Class seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of the Defendant, and for restitution and disgorgement.

103.    Additionally, pursuant to sections 501.211(2) and 501.2105, *Florida Statutes*, Plaintiffs and the Class make claims for damages, attorney's fees and costs.

### VII. SECOND CAUSE OF ACTION:
### NEGLIGENT MISREPRESENTATION

104.    Plaintiff re-alleges and incorporate by reference the allegations set forth in the preceding paragraphs numbered one (1) through one hundred and seven (107) of this Complaint as if fully set forth herein verbatim.

105.     Defendant has negligently represented that the Products have nothing artificial or synthetic, and are all "100% Natural," when in fact, they are not because they contain unnatural, synthetic, and/or artificial ingredients.

106.     Defendant has misrepresented a material fact to the public, including Plaintiffs and Class Members, about its Products; specifically, that the Products are "100% Natural" when they contain unnatural, synthetic, and/or artificial ingredients.

107.     Defendant knew or should have known that these omissions would materially affect Plaintiff's and Class members' decisions to purchase the Products.

108.     Plaintiffs and other reasonable consumers, including the Class members, reasonably relied on Defendant's representations set forth herein, and, in reliance thereon, purchased the Products.

109.     The reliance by Plaintiff and Class members was reasonable and justified in that Defendant appeared to be, and represented itself to be, a reputable business, and it distributed the Products through reputable companies.

110.     Plaintiff would not have been willing to pay for Defendant's Products if they knew that they contained unnatural, synthetic, and/or artificial ingredients.

111.     As a direct and proximate result of these misrepresentations, Plaintiff and members of the Class were induced to purchase and consume Defendant's Products, and have suffered damages to be determined at trial in that, among other things, they have been deprived of the benefit of their bargain in that they bought Products that were not what they were represented to be, and they have spent money on Products that had less value than was reflected in the premium purchase price they paid for the Products.

## VIII. THIRD CAUSE OF ACTION:
## <u>BREACH OF EXPRESS WARRANTY</u>

112.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through eighty-seven (87) of this Complaint as if fully set forth herein verbatim.

113.   Defendant has expressly represented that the Products are "100% Natural," when in fact, they are not because they contain unnatural, synthetic, and/or artificial ingredients.

114.   The Products are marketed directly to consumers by Defendant, come in sealed packages, and do not change from the time they leave Defendant's possession until they arrive in stores to be sold to consumers.

115.   Plaintiff is informed and believes, and thereon alleges, that Defendant made an express warranty, including, but not limited to, that the Products were "100% Natural."

116.   As a proximate result of the failure of the Products to perform as expressly warranted by Defendant, Plaintiff and members of the Class have suffered actual economic damages in an amount to be determined at trial in that they were induced to purchase products they would not have purchased had they known the true facts about, and have spent money on Products that were not what they were represented to be, and that lack the value Defendant represented the Products to have.

117.   Plaintiff and Class members gave timely notice to Defendant of this breach on behalf of themselves and all members of the Plaintiff Classes, directly through a Notice letters sent to Defendant on September 24, 2014.

## IIX. FOURTH CAUSE OF ACTION:
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## <u>15 U.S.C. §§ 2301 *et seq.*)</u>

118.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the

preceding paragraphs numbered one (1) through eighty-seven t (87) of this Complaint as if fully set forth herein verbatim.

119.    Defendant has breached an express warranty regarding the Product, as described in the fourth cause of action above.

120.    Plaintiff and the Class are consumers as defined in 15 U.S.C. § 2301(3).

121.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)(5).

122.    The Products are consumer products as defined in 15 U.S.C. § 2301(6).

123.    By reason of Defendant's breach of the above implied warranty of fitness for particular purpose and breach of express warranty, Defendant has violated the statutory rights due to Plaintiff and members of the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C.§§ 2301 *et seq.*, thereby economically damaging Plaintiff and the Class.

124.    Therefore, Plaintiff and the Class seek all available remedies, damages, and awards under the Magnuson-Moss Warranty Act.

### IX. FIFTH CAUSE OF ACTION:
### <u>UNJUST ENRICHMENT</u>

125.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through eighty-seven (87) of this Complaint as if fully set forth herein verbatim.

126.    In its marketing and advertising, Defendant has made false and misleading statements and/or omissions regarding the Products, as described herein.

127.    Defendant has represented that the Products are "All Natural," when in fact, the Products contain the above alleged unnatural, synthetic, artificial, and/or genetically modified ingredients.

128.    The Products are marketed directly to consumer by Defendant, come in sealed packages, and do not change from the time they leave Defendant's possession until they arrive in stores to be sold to consumers.

129.    Plaintiff and Class Members conferred a benefit on Defendant by purchasing the Products.  Defendant accepted and retained the benefit in the amount of the purchase price and/or profits it earned from sales of the Products to Plaintiffs and other Class members.

130.    Defendant profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain said benefit.

131.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions, as set forth herein. Defendant is aware that the claims and/or omissions that it makes about the Products are false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class.

132.    Plaintiff and Class members do not have an adequate remedy at law against Defendant (in the alternative to the other causes of action alleged herein).

133.    Accordingly, the Products are valueless such that Plaintiff and Class members are entitled to restitution in an amount not less than the purchase price of the Products paid by Plaintiff and Class members during the Class Period.

134.    Plaintiff and Class members are entitled to restitution of the excess amount paid for the Products, over and above what they would have paid if the Products had been adequately advertised, and Plaintiff and Class members are entitled to disgorgement of the profits Defendant derived from the sale of the Products.

# XI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

1. For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

2. For an award of declaratory and equitable relief as follows:

    (a) Declaring Defendant's conduct to be in violation of FDUTPA and enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the design, testing, manufacture, assembly, development, marketing and advertising of the Products for the purpose of selling the Products in such manner as set forth in detail above or making any claims found to violate FDUTPA or the other causes of action as set forth above;

    (b) Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

    (c) Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices; and

    (d) Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described herein.

3. For actual damages in an amount to be determined at trial for all causes of action;

4. For an award of attorney's fees and costs;

5. For any other relief the Court might deem just, appropriate, or proper; and

6.      For pre- and post-judgment interest on any amounts awarded.

## XII. DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully Submitted By,

Dated: October 23, 2014

/s/   Joshua H. Eggnatz
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
**THE EGGNATZ LAW FIRM, P.A.**
5400 S. University Drive, Ste. 413
Davie, FL 33328
Tel:    (954) 889-3359
Fax:    (954) 889-5913
JEggnatz@EggnatzLaw.com
MPascucci@EggnatzLaw.com

*Attorneys for Plaintiff*
*and the Proposed Class*

.